## BOONE et al. v. MANLEY et al.

(Third Division.   Fairbanks.   September 7, 1905.)

### No. 295.

1. PARTITION—MODE OF PARTITION—MINES AND MINERALS.

In a suit for partition of a mining claim the court may decree partition by metes and bounds, or, if partition by metes and bounds cannot be made without great prejudice to the owners, the claim may be sold, and the proceeds divided.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Partition, § 221.]

2. SAME—DETERMINATION.

From the evidence it appeared that plaintiffs owned one-quarter and defendants three-quarters of the claims which they asked the court to partition; that the claims were worth $800,000, and that the paystreak ran through the center of the claims, and was of approximately equal value through its whole length; that if sold it would bring but one-fourth of its actual value, entailing a loss of $600,000; and that it must then be sold on partial payments. *Held*, that it was more equitable to divide it by metes and bounds, and so ordered.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Partition, § 221.]

This is a suit brought by the plaintiffs for a partition of four adjoining mining claims, Nos. 4 and 5 below discovery, creek claims, and the adjoining side or bench claims Nos. 4 and 5 on Cleary creek, in the Fairbanks mining district, territory of Alaska.   The plaintiffs pray that partition be made by shares. The defendants answer, and also request a partition, but pray that it be made by a sale of the entire premises and a pro rata

division of the proceeds. Plaintiffs together own one-quarter and defendants three-quarters, and they were engaged in working the claims as mining partners.

N. V. Harlan and McGinn & Sullivan, for plaintiffs.

Carr & Nye, for defendants.

WICKERSHAM, District Judge. The only question for the court to decide in this case is whether the partition shall be made by a division of the mining claims in kind between plaintiffs and defendants, or by a sale of the entire property, and a division of the proceeds.

The statute of Alaska (Code Civ. Proc.) provides that:

"Sec. 404. If it be alleged in the complaint and established by evidence, or if it appear by the evidence, without such allegation in the complaint, to the satisfaction of the court, that the property, or any part of it, is so situated that partition can not be made without great prejudice to the owners, the court may order a sale thereof, and for that purpose may appoint one or more referees. Otherwise, upon the requisite proofs being made, it shall adjudge a partition according to the respective rights of the parties, as ascertained by the court, and appoint three referees therefor, and shall designate the portion to remain undivided for the owners whose interests remain unknown or not ascertained."

This statutory rule requires the court (1) to adjudge a partition according to the respective rights of the parties; but (2) if partition cannot be made without great prejudice to the owners, the court may order a sale thereof, and divide the proceeds. This places the burden upon the court to decide from the evidence whether the partition can be made by shares without great prejudice to the owners; or, to carry the rule to its proper limit, the court must determine whether their rights and interest will suffer greater prejudice by a division into parts or by a sale, and must adopt that course which will most certainly protect all the parties.

While our statute gives to the partition by shares the preference, yet a mining claim is a property whose value lies hidden

beneath the ground to such an extent that generally it cannot be divided on the surface, but must be sold. But where its hidden wealth is explored and so ascertained as to be capable of location and fair partition by shares, the rule permits it to be done that way, and the statute requires it.

In this case the paystreak is exposed and worked at the upper end, in the center, and at the lower end. It is shown to be more even and regular in its deposits of placer gold than placer mines usually are. There are necessarily differences of value from day to day in the workings, but the general result of given lengths of the paystreak average nearly the same; the disproportion is not great. The pay is shown, by the evidence of the workings on these claims, and by the run of the pay for miles both above and below the ground in question, to be fairly continuous and regular. The evidence discloses, almost beyond doubt, that the paystreak enters the upper end of No. 4, passes down its entire length into and down the entire length of No. 5, and thence into the adjoining claims.

The defendants urgently insist that the claims be sold as a body, and the proceeds divided; but upon their testimony alone the court ought not to so order. Two of defendants' witnesses testify that upon a sale of such a property they would not pay more than one-fourth of its value. No evidence was offered to show that it would bring a greater proportion, and the defendant co-owners declined to state the value of the property, though frequently requested to do so. If it were offered for sale, in this condition of the evidence, defendants, owning three-quarters, could purchase the plaintiffs' quarter for one-fourth of its value, and the court, having acted on that evidence and with that notice of the rule for purchases, would almost be bound to approve the sale. Defendants refused to give the court any information as to the real value of the property, though they ought to have done so. The plaintiffs state that it is worth $800,000, and that their quarter interest is

worth $200,000. If it were sold upon the rule stated by defendants' experts, there would be a loss of $600,000 upon the whole valuation, while plaintiffs' loss would be $150,000, or three-fourths of their entire property. It is not shown to the court that there are purchasers who are able and willing to buy at any figure, and the defendants plainly stated that it ought to be sold on terms—a part cash, and the balance on time. The court would not, from the highly speculative character of mining, be justified in sacrificing the property, and that on credit, with no certainty from the conditions in this new mining camp that the balances would be paid.

It is my judgment that the least prejudice to the owners will result from an actual division of the mines by lines at right angles to the course of the paystreak, so as to give plaintiffs' one-quarter of the ground worked out and one-quarter of the unworked ground, and to the defendants three-quarters of each; the mining machinery to be divided in kind, if parties can agree upon it, otherwise to be sold, and the proceeds divided in proportion; the water rights to be divided upon the plan of giving one-quarter to plaintiffs and three-quarters to defendants, and so guarding their rights by the decree that each shall have his share of the water upon his own ground, and each the right to carry water across the other, to perfect the equitable division; other property, of a minor value or different kind, to be divided by sale or division in kind, in accordance with the general purpose of this verdict. Counsel may prepare findings and decree if they can agree. The court will appoint referees, if necessary, or will, when the maps and information asked for are presented, make the division thereon in accordance with the testimony and this verdict.